## TAYLOR v. MURRAY et al.

No. 7570.   Decided June 6, 1951.   (232 P. 2d 367.)

See 60 C. J., Stipulations, sec. 83. Sales of personalty, fraud or mistake as affecting. 46 Am. Jur., Sales, secs. 470 et seq.

*M. M. Morrison,* Logan, *H. A. Sjostrom,* Logan, for appellant.

*George D. Preston,* Logan, for respondent.

LATIMER, Justice.

This is an appeal by Kenneth B. Murray, defendant below, from a decision decreeing as follows: That Horace F. Taylor is the owner of a 1941 Hudson sedan automobile and entitled to possession of the certificate of title; that Murray's counterclaim against Taylor should be dismissed; and that his third party claim for alleged breach of contract brought against the respondent Charles P. Stuart should be denied. In this opinion, the parties will be referred to by their surnames.

Taylor, plaintiff in the court below, is an automobile dealer in Logan, Utah, doing business as the Taylor Motor Service. At the time of the transactions herein involved, Murray was a salesman for and had purchased a 1949 Packard sedan from Taylor which Murray used as a demonstrator. Payment for the automobile was to be made in accordance with the terms of a conditional sales contract, which Taylor had assigned to the Lockhart Company, a finance company in Ogden, Utah.

Prior to October 27, 1949, Murray had been discussing with Stuart the trade-in of Stuart's 1941 Hudson and the purchase of either a new Packard automobile or the 1949 Packard demonstrator previously mentioned. On that date, Stuart offered to purchase the demonstrator car and signed a car order which was on the regular form used by Taylor. However, on the order Murray is shown as the dealer, and Stuart as the purchaser. Below the signature and address of Stuart there are two blanks, one for signature of the salesman, and one for the dealer signature. Murray's signature appears on the line designated "Salesman"; but there is no signature on the line designated "Accepted by _____, Dealer's signature." The order was signed by Stuart while he was out in the beet fields working with a farm crew. Murray obtained the title and registration certificate on the Hudson, and a few days later he picked up the Hudson sedan and took it to Taylor's garage.

On November 9, 1949, Stuart and his wife went to the Taylor garage to get the car. Murray was away from the garage at the time and Stuart and his wife, being dissatisfied with the condition and appearance of the used car, decided to purchase a new one. Taylor thereupon sold Stuart a new 1950 Packard, in place of the 1949 model. Later that evening, Murray returned to the garage and learned what had happened. After an argument with Taylor regarding the transaction, Murray terminated his employment. Taylor gave him a check, which included his regular salary up to date and a commission on the sale of the 1950 Packard to Stuart. Murray accepted the payment by endorsing the check and obtaining the cash.

There is a dispute in the evidence as to when the title certificate to the 1941 Hudson was signed by Stuart. Murray claims that it was signed on October 27th, when the car order was signed. Taylor and Stuart testified that after Stuart had purchased the new 1950 Packard, and after Murray had terminated his employment with Taylor, Mur-

ray, at Taylor's request, went to Stuart's residence with the Hudson title certificate to have it signed, that Stuart signed it at that time; and that Murray represented to Stuart that he was obtaining the signature for the benefit of Taylor. In either event, Murray retained possession of the title certificate, obtained the 1941 Hudson, without the knowledge or consent of Taylor, and took it to his home. Taylor made several demands upon Murray for the return of the Hudson and finally sent two of his employees to Murray's home who obtained possession of the car.

In the meantime, Murray defaulted on his payments on the conditional sales contract for the 1949 Packard, and the finance company required that he put the automobile in storage in Taylor's garage. On December 9, 1949, Taylor, who had negotiated and guaranteed the contract, paid the balance of $2,100 due to the finance company, and subsequently sold the car, keeping all the proceeds from the sale. The evidence shows, however, that before he sold the Packard, Taylor offered to return it to Murray upon reimbursement from him of the $2,100 paid the finance company. Murray failed to accept the offer.

On December 19, 1949, Taylor commenced this action against Murray to recover possession of the 1941 Hudson title certificate. By way of counterclaim against Taylor, and by way of third party complaint against Stuart, Murray claimed he had a contract with Stuart for the purchase and sale of his car, which Stuart had breached; that because of this contract he became the owner of the 1941 Hudson; that Taylor had wrongfully deprived him of possession of the Hudson; and that his default in the payments for the Packard demonstrator had been caused by Taylor's wrongful acts and conduct and by Stuart's breach of his contract to purchase the automobile.

Murray demanded a jury trial, but subsequently the parties stipulated that the only question which the court need submit to the jury was whether Murray had fraudu-

lently misrepresented that the Packard was a 1950 model. Based partly on this stipulation and partly on request by the parties, the court submitted four special interrogatories to the jurors. They rendered answers to specific questions substantially as follows: (1) That Murray did not falsely represent to Stuart that his Packard was a 1950 model or would be changed by Murray on all public and private records to a 1950 model; (2) that Murray did not represent to Stuart that his Packard had no body nor door defects; (3) that at the time Stuart signed the certificate of title to the Hudson he intended to transfer tile to Taylor; and (4) that at the time Stuart signed the order for the demonstrator it showed that a 1949 Packard was being sold.

The trial judge adopted the findings of the jury and supplemented them with his own findings, some of which are contrary to the answers returned by the jury. Based on his interpretation of the answer to special interrogatory No. 3 and other findings made by him, the trial court concluded that because Murray had represented himself to Stuart to be the agent of Taylor; that Stuart believed he had entered into a contract with Taylor; that the contract between Stuart and Murray was not consummated; that the later contract between Stuart and Taylor was the only completed transaction; that Murray was not entitled to a judgment against either Taylor or Stuart; and that Taylor was the owner and entitled to the possession of the certificate of title to the 1941 Hudson. Judgment was entered accordingly, and Murray appeals from that judgment.

The parties have argued a number of points on this appeal, but in view of the fact that we are reversing because of one error on the part of the trial judge prejudicial to Murray, we need not consider the others.

As we read the record, there appears to have been a metamorphosis in the issues. The case started out on the theory that Stuard was defrauded by Murray's fraudulent misrepresentations concerning the year model of the car

but ended up by a finding that there was no contract because of mistaken identity as to who was selling the car. When the parties rested, the trial court apparently misconceived the issues and made findings contrary to the pleadings, the stipulations of the parties and the special interrogatories answered by the jury. He concluded there was in issue the question of whether there was a contract between Murray and Stuart because of failure of the proper party to accept the offer. If that issue were properly before the trial court, it might be that we could find facts in the record to sustain the finding. However, we are unable to discover how that theory ever crept into the case.

Briefly reviewing the pleadings, the issues framed were these: Taylor, in his complaint, sought to recover the certificate of title to the Hudson automobile from Murray, who then had it in his possession. Murray denied Taylor's claim to the certificate and counterclaimed for the value of the automobile and for damages for loss of his equity in the Packard, allegedly caused by Taylor's wrongful acts in conniving with Stuart to cause him to breach the contract with Murray. In addition to the counterclaim, Murray caused Stuart to be brought in as a third party defendant and cross complained against him for breach of the contract. Taylor's answer to the counterclaim is only important to this decision insofar as it contains allegations which were adopted by Stuart. In his answer to the cross complaint, Stuart adopted the following allegations from Taylor's answer:

"Further answering said counterclaim, the plaintiff alleges that on or about the 8th day of November, 1949, said Hudson automobile belonged to and was in the possession of one Charles Stewart [sic], of Wellsville, Utah, and that the said Charles Stewart and this defendant [Murray] entered into negotiations by which the said Charles Stewart intended to purchase from the defendant a 1950 model Packard sedan automobile and, as part of the purchase price therefor, to transfer and set over to this defendant his said Hudson automobile as a turn in on the purchase price of said Packard and to be credited for said Hudson automobile the sum of $550.00.

"That then and there this defendant was the owner of the equitable title to one Packard automobile subject to a prior lien thereon in the name of the holder of the legal title thereto, to-wit: The Lockhart Finance Company, of Ogden, Utah.

"That in order to induce the said Charles Stewart to enter into said contract and in order to deceive and defraud the said Charles Stewart, this defendant falsely and fraudulently represented to the said Charles Stewart that his said Packard automobile was a model of 1950 and that the same was in a perfect state of repair and condition; that said representations on the part of the defendant were false, fraudulent and untrue in this respect, that said Packard automobile was not in fact a model of 1950 but was in truth and fact a model of 1949; and that said automobile was not in good condition, but that the same had been damaged in one of the doors thereof to the extent that one of the said doors was bent and sprung and had been repainted in an effort to cover the damage thereto. That all of the representations of the defendant were made for the purpose of deceiving and defrauding the said Charles Stewart, and that the said Charles Stewart in entering into negotiations with the defendant relied upon the truthfulness of the defendant.

"That by reason of the false and fraudulent representations of the defendant as aforesaid the said Charles Stewart repudiated any agreement or purported agreement which he intended to make with this defendant and so informed the defendant of such repudiation."

It should be noted at this point that the tenor of this allegation is to the effect that Stuart entered into negotiations with Murray to purchase Murray's 1950 Packard, knowing that he was the owner of an equitable interest in the automobile. Stuart's claimed defense to the contract was not that he believed he was dealing with Taylor, but that he was dealing with Murray for the purchase of a specific automobile and that Murray had misrepresented the year in which his car was manufactured. The pleadings contained an admission of an intent to purchase from Murray. The gist of the alleged defense was a claim of fraud and misrepresentation.

It seems to be a fair assumption that the defense of fraud was the sole issue which was in the minds of counsel when they stipulated at the commencement of the trial that the

only question which should be submitted to the jury if the evidence was sufficient, was the question of the fraud alleged in the pleadings of Taylor and Stuart. The stipulation hardly permits a conclusion that there were other factual questions which were to be decided by the trial judge, but as the trial neared the end he seemed to have so concluded that he and the jury should share the duty of deciding the facts.

With the possible exception of the four special interrogatories, the instructions deal solely with the question of false representations relative to the model of the Packard and three of the interrogatories deal with the same subject. Interrogatory No. 3, which will be discussed later in this opinion, deals with the intent of Stuart at the time he signed the certificate of title.

The jury in answering the special interrogatories found in favor of Murray on all issues of fraud. For reasons not clearly apparent in the record the trial judge inconsistently approved the findings of the jury and yet made contrary findings in favor of Stuart. He approved the jury's finding that Murray did not falsely represent to Stuart that his automobile was a 1950 model or falsely represent the public records could be changed so as to show it was that year's model; and yet, in his sixth finding he found that Murray represented to Stuart that the year model of the automobile could be changed upon the official records of the State of Utah, and that Stuart believed that the automobile which Murray attempted to sell was a 1950 Packard automobile, not a 1949 Packard. The parties, having stipulated that that issue should be submitted to the jury for determination, and the jury having found for Murray, he should be entitled to the benefit of the finding. Had the court honored what appears to have been the intent of the stipulation, a judgment against Stuart in the issues framed would have been in order.

It might be that the inconsistency of the trial court's findings would not be material if the pleadings or the stipulation of the parties permitted the court to conclude that there was not a completed contract because Murray had misled Stuart into believing that the contract was being negotiated for the benefit of Taylor and consequently there was not a meeting of the minds on a material element of the contract.

It is difficult to ascertain why, under the pleadings and stipulation, Murray should have been faced with that issue. Stuart alleged he dealt with Murray and entered into a contract for the purchase of Murray's car. There was no claimed uncertainty about the identity of the contracting parties. It was admitted. With this admission in the pleadings, there would be no occasion for Murray to request that that question be submitted to the jury by a special interrogatory. It may be that under Rule 49 of the new Rules of Civil Procedure if the court fails or omits to submit an issue of fact raised by the pleadings the parties must specifically request a finding by the jury or waive their right to a finding on that particular issue. This rule can be of little aid in sustaining the present judgment for the reason that the pleadings raise no issue of mistaken identity. There is no necessity for counsel to request a finding on an admitted fact. In addition, by stipulation of counsel the issues had been narrowed to the single question of fraud and misrepresentation as to the model of the car, and with this stipulation narrowing the points to be decided there is no good reason for the trial judge to go beyond the stipulation and decide other factual matters because they were not the subject of special interrogatories.

It is argued that by their answer to special interrogatory No. 3, the jurors found that Stuart did not intend to contract with Murray and hence the judgment must be affirmed for the reason previously mentioned. The interrogatory and the answer were as follows:

"Number Three: At the time Charles P. Stuart signed his name on the back of the certificate of title in question, to whom did he then intend to transfer the title of his 1941 Hudson car to: (Here insert either the name of Taylor Motor Co. or Ken Murray).

"Answer: Taylor Motor."

Aside from the fact that this contention is contrary to Stuart's admissions in the pleadings and the theory upon which the case was tried, it does not follow that this finding is conclusive on the intent of Stuart to contract with Murray. There was evidence in the record that the certificate was signed by Stuart after Taylor had sold the new Packard to Stuart, and obviously if the jury believed this testimony it had to find that Stuart endorsed the certificate as part of his down payment on the new car. The finding cannot be stretched far enough to sustain the assertion that Stuart did not believe that he had entered into a contract with Murray, as it does not touch that question. Under Stuart's theory, he repudiated the contract because of claimed fraud and he asserted the right to transfer the title to his car to Taylor as part of the subsequent transaction. This he did after repudiation of the first contract. Faced with this evidence, the jury could hardly find that he intended to transfer title to Murray when Stuart denied signing the certificate until after he had repudiated the Murray contract. If the contract with Murray could not be disaffirmed because of fraud, then a subsequently formed intent to transfer the car to Taylor would not defeat Murray's action for breach of contract.

We are convinced the error against Murray requires a reversal against both Stuart and Taylor. The holding of the trial court that there was no contract between Murray and Stuart necessarily determined that Taylor was entitled to the certificate of title to the Hudson. We are unable to decide who is the rightful owner of the certificate as this depends upon the validity of Murray's contract with Stuart, and a finding as to the time and reasons for delivery. If

it is subsequently determined that this contract is binding and that the certificate was endorsed and delivered to Murray at the time the car order was signed, then he would be entitled to retain it as part of his bargain. If, on the other hand, it develops that the certificate was not delivered to Murray but was subsequently given to Taylor as part of a down payment on the purchase of the new car and was specifically endorsed to him for that purpose, then he may be entitled to its possession.

In suggesting the problems involved in the event of a retrial, we have not overlooked the question of whether Murray might be estopped to claim any rights against Taylor because of having accepted his commission on the sale of the new car. We express no opinion on the merits of that contention as it should be first passed on by the trial court.

The judgment is reversed, with directions to the trial court to grant a new trial. Costs to appellant.

WOLFE, C. J., and WADE, McDONOUGH, and CROCKETT, JJ., concur.